The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Good afternoon. We'll call the next case, which is 4-21-0507. People of the State of Illinois v. Taylor. Counsel for the appellant, please state your name for the record. Joshua Scanlon. For the appellee? David Robinson. Very well. Thank you, Counsel. You may proceed to argument. Thank you, Your Honor. May it please the Court. Counsel, my name is Joshua Scanlon and I'm here today representing Kylie Taylor in her appeal and requesting that this court reverse her convictions for aggravated battery outright, where the state failed to prove that she made physical contact or that she knew physical contact would be the result of her actions. Alternatively, we ask that this court remand her case for a new trial where the trial court failed to properly instruct the jury as required by Rule 431B. Counsel? Yes, Your Honor. I have a question for you. Since case law deems spitting sufficient to constitute physical contact for purposes of battery, why does the fact that the defendant spittle Officer Stark not amount to contact here? Because, Your Honor, this is distinguishable from the cases where someone deliberately or specifically spit on someone. This is not an instance where a spittle in her mouth and projected it with the intention of getting spit on a person, or that she gathered, say, that tangible object of saliva and projected it in that way. This is a puff of air. And at the end of the day, Officer Starkey's testimony about that spittle was rather equivocal. So, to the extent that this would have the same result or the same effect as yelling or speaking, it would be absurd to have that meet the same requirements of physical contact where yelling or breathing shouldn't also amount to a cause for physical contact. Well, let's separate Troglia, who said that there was just breathing or a puff of air from Starkey, who testified that he felt some sort of moisture instead. So what is there in terms of a requirement? I mean, the battery statute says physical contact by any means. And we have the moisture droplets. We have testimony about that. So I'm not sure I understand the distinction you're making. Simply, Your Honor, that a puff of air, moisture otherwise, shouldn't be something that ultimately is found to be physical contact. I'm sorry, Your Honor. Did you have a question? I'm waiting to hear the rest before I hear it. Where this is ultimately of the same effect as speaking or breathing, and this is a matter of first impression, whether or not a puff of air is sufficient for physical contact, and no court has currently found that it meets that requirement, this court should simply not be the first to do so. But again, let's separate a puff of air from the spittle. We're talking about spittle that has gotten there either by, under Peck, a direct act of spitting and a cough that results in spittle landing on the victim. So, again, I'll go back one more time. I don't understand the difference between, let's say, a cough with spittle and the act of spitting. Is there a case law that makes that distinction? No, Your Honor. There is not a case law that makes a particular distinction. That is essentially the argument at this point, that there should be a distinction there, and where no court has currently reached to the point that there is a distinction, this court should not be the first to find that that is sufficient for physical contact. That said, Your Honor... There is a spit gap, in other words, in this evidence. Is that correct, Counsel? Yes, Your Honor. We have spit, but it doesn't look like we have enough. I'm sorry, Your Honor? We have spit, but apparently not enough. We have spit, I would argue, beyond that, even if it were sufficient by itself to be physical contact. The evidence was insufficient on the element of knowledge, and that evidence of physical contact was... What do you mean insufficient on the element of knowledge? She wasn't aware of what she was doing? She wasn't aware of the... She wasn't aware, consciously aware, that it was practically certain that she would make physical contact by doing what she was doing. That's... She spits in his direction. That's not enough to demonstrate that she meant to spit on him. That she coughed, Your Honor, in his direction was not enough to demonstrate that she knew she was going to make physical contact, either through spit or whatever other means. How about her remarks that she did so, like she hopes that she will infect them with COVID? Could we draw any inferences of what she was intending from that? Certainly some... Yes, Your Honor, you could draw inferences from that, but I don't believe you could draw the inference that she knew that she would make physical contact. Taken as a whole, her contact... Her comment about hoping the officers got COVID in context is... can really only be understood as evidence of her anger, and at worst, a disregard for some unclear risk of transmission or contact related to that. I'm going to ask about Officer Troglia, if that's how it's pronounced. He said that he could feel the heat of her breath on his face. And the question is, is that good enough with regard to moisture-conveyed disease such as COVID and her intent to try to infect them, according to her own words? It's your position that just breath alone wouldn't be enough? Yes, Your Honor. Let me ask this. Were this a jury trial, we would be instructing the jury that they could take their own common experiences into consideration as they evaluate all the evidence. And I suppose the question is, what kind of experiences are there that would permit a jury to conclude that there is moisture in breath, so that when he said, I could feel the heat of her breath on my face, they could conclude that there would have been moisture accompanying it. Two specific examples. You wear glasses, as do I. I suspect you may have had the situation where you get something smudged on your glasses and take them off and breathe on them, only to see miraculously moisture to then be present and you take a cloth and wipe your glasses. Have you ever done that, counsel? Yes, Your Honor, I have. So I think that's the kind of experience that a juror could have. Also, the other thing is walking up to a mirror and breathing onto it or glass service and then trying to rub it clean or something, which would suggest that there is also moisture there. Are these factors a jury could consider? Certainly the jury. Yes, Your Honor, the jury can consider it's common experience. As far as what might or might not be contained in the cough, but I... In a breath. In a breath. I could feel the heat of her breath on my face, which means that testimony must mean she's got to be pretty close to him in order to be able to feel the heat of her breath on his face. And because I'm wondering, is your argument that the state would need to present expert medical testimony from some physician saying, yes, it is my opinion that human breath contains moisture? Not necessarily, Your Honor. Depending on the circumstances, that might be something that was necessary, again, depending on what causes the contact or not. But ultimately, the issue here with regard to knowledge is that when the evidence is considered as a whole... Wait, wait, wait. With regard to knowledge again, you're talking about she didn't understand what she was doing? That she did not have a conscious awareness that physical contact would be the result of her actions for a certainty. Her actions as a whole, when taken into consideration, that she was in an emotionally charged situation, that she was angry and lashing out at everybody really involved. There was no defense evidence presented. So the only evidence on point, and we have no reason to disbelieve it, is Troglia. Officer Troglia's testimony that apparently she was close enough to him, I could feel the heat of her breath on my face. Now, that's got to be real close. How is she mistaken about the effects of any of this? Because, Your Honor, again, what her knowledge was at the time is sort of based... Let me approach it this way. In the context of the evidence, we entered an emotionally charged situation where she was yelling and upset at everybody. And when she did the coughing, she had already at that point spit on her girlfriend, Ms. Rahm's face. She then had the experience of... She had the instance of coughing in the direction of the officers. And then later she spit on the cage of the police car. Taken in context where she specifically caused contact by spitting on Ms. Rahm, and then later spitting on the police cage, there is a distinct difference between her actions toward the officers. In context... I'm sorry, Your Honor. Counsel, you're forgetting about the fact that the officers were on either side of her, presumably facing forward. That when she coughed, the evidence showed she turned her face toward one or then the other officer. And accompanied that cough with the statement that, I'm in quarantine, and I hope you, profanity, get COVID also, or something to that effect. Now, how we can ignore that evidence in this situation and say that there was no knowledge when, as Justice Steigman pointed out, she actually took steps to make sure that her actions were effective. Well, Your Honor, I don't think we need to ignore that evidence. But I think, again, taken in context with the comparison where she actually did spit on someone and actually did spit on the object of the police car, the certainty of physical contact is significantly less in the action of her coughing. Even if this would be sufficient to show knowledge or physical contact, that evidence is still closely balanced under those circumstances. Counsel, I'd like to shift into another area in your brief regarding plain error analysis. Yes, Your Honor. You take issue with the decision of this court, People v. Eli, from four years ago, in which you allege that we have mistakenly, in Eli, put an additional requirement of proof of prejudice, which conflicts with the central holding of Eli, which you quote as talking about how resulting possibility there might have contributed to the unfavorable outcome as the evidence closely balanced analysis. Have I correctly stated your position? Yes, Your Honor. The reason I asked that is, there is a decision of the Supreme Court of Illinois from four months ago, three months ago, addressing this. People v. Williams, 2022, Illinois 126918, where the court, talking about plain error, specifically first prong, said, Consequently, the plain error doctrine allows the reviewing court to consider a forfeited but still clear and obvious error in two limited circumstances. The first deals with first prongs, what this court said. One, where the defendant's conviction may have resulted from the error, not the evidence, and then says, Stated differently, the plain error doctrine implies in cases involving prejudicial error, errors that may have affected the outcome in a closely balanced case. And then they, just to make sure, the next paragraph, they said, though there's no additional substantiality requirement, because all plain errors are substantial, first prong plain error must still be prejudicial. That's essentially what we held of Eli that you are now attacking in your brief. Your Honor, we include that the statement against Eli largely for preservation of this issue, but to just briefly state it, our position is simply that once closely balanced error is found that prejudicial is that prejudicial aspect has been fulfilled. Beyond that, I would simply state our position. So the Supreme Court was wrong in the Williams case when they kept on talking about first prong plain error must still be prejudicial? No, Your Honor. I, again, simply maintain that when closely balanced evidence is found, that establishes that that level of prejudice. Counsel, with all due respect, the court, that's not, that may be true in the second prong, that prejudice is inherent in the error, but the court in Williams went on to say in that same paragraph. And I think this is maybe the nuance, that it must have been, the error must have been damaging enough that it threatened to tip the scales of justice against the defendant. That's the nuance, that's the prejudice, that's that other aspect of this that is required, that I think Justice Steigman was talking about in Eli, that Sebi talked about, notwithstanding your argument, and that Williams talks about, that our Supreme Court talks about. At least that's the way I read it. But, but let me just, and I have heard your position and understand what you're saying, but we don't really have to reach that point, do we, if we find that the evidence was not closely balanced, isn't that correct? Yes, Your Honor, that would be correct. The evidence in this case, again, I argue is closely balanced. Evidence is found closely balanced for purposes of plain error, or has been found closely balanced for purposes of plain error, where it hinges on a credibility determination, and where there are competing but plausible readings of the evidence. Right there, counsel, where the courts have said it hinges on a credibility determination, that means in the cases where there's a credibility conflict, namely there's defense evidence presented that disputes whatever the state's evidence was going to be. But as I mentioned earlier, we have no credibility conflict here at all. We have the police testimony. And unless there's some problem with that testimony, I don't think you've identified it in your brief, and you haven't in these oral arguments as to inherently why it's not believable, where is the credibility contest? In terms of credibility, defense counsel did challenge the officer's credibility on their testimony of what they felt, particularly where they didn't include that information in their police reports. And where that testimony, at least in terms of Starkey's testimony with regard to the presence of moisture or spit, in a sense, was rather equivocal on whether or not he felt something. And to that extent, to the extent that defense counsel challenged the officer's credibility on what they may have felt in this situation, which is largely what the state based its argument on physical contact on, that hinged on the officer's credibility. Neither was the defense required to present their own evidence or have Ms. Taylor testify in order for that credibility contest to take place or for the evidence to be closely balanced. In Pietkowski, I believe it hinged on the testimony, I believe it was identification testimony in that case, of two eyewitnesses, and the defense had not presented evidence, but it was still found closely balanced in that case. And that is the same basis on which it should be found closely balanced here. Similarly, evidence of Ms. Taylor's knowledge was closely balanced here. As a plausible reading of the evidence could show that physical contact was not a result that Ms. Taylor was consciously aware of, where her actions and statements as a whole can be seen as attempts to be offensive or to scare the officers, but not necessarily to make contact with them. The court's failure to ensure the jury's understanding and acceptance of the Zare principles was particularly prejudicial in this case, where Ms. Taylor did not testify or present any evidence on her own, and sought only to hold the state to its high burden of proof. As such, Ms. Taylor's defense relied on the jury's faithful adherence to the Zare principles, and the court's failure to ensure their understanding and acceptance of those principles tipped the scales against Ms. Taylor. It's on that basis that this was closely balanced and the court's error caused sufficient prejudice to require a remand for a new trial. Because the evidence of physical contact and knowledge was insufficient, or at least closely balanced, Ms. Taylor respectfully requests that this court reverse her convictions outright or remand for a new trial. Thank you. Thank you, Mr. Scanlon. Mr. Robinson for the appellee. Apologize. Thank you, Your Honor. May it please the court, Mr. Scanlon. To be clear, this is not a close case, and this is not a novel case. It's not a close case under the reasonable doubt argument. It's not a novel case under that argument either. And it is not a close case, nor is it a novel case, under 431B and the issues related to preservation. Beginning with the reasonable doubt argument and to try to address as best I can Justice Zinoff's questions distinguishing between Starkley and Troglia, clearly Starkley testified he felt moisture there. I think Justice Steigman makes the point related to Officer Troglia, related to the moisture that he felt or the coughing. So I want to point one thing out here under Section 12-3A2 that defines battery. It says a person, and this is on page 8 of the state's brief, a person commits battery if he intentionally or knowingly, intentionally or knowingly, without legal justification and by any means, and we emphasize that by any means, makes physical contact of an insulting and provoking nature with an individual. And then we go on to talk about how the court determines what fits into that category. And I think, I believe Justice Steigman wrote the opinion in Peck, which we cite, that talks about, and a number of cases that have flowed following Peck, I believe that was the early 90s, talk about context. Whether something is physical contact of an insulting or provoking nature by any means is a matter of context. The defendant repeatedly today in his brief argues about knowledge, knowledge and intent. These are questions for juries. These aren't questions that we should be answering on appeal when the standard of review is the light most favorable to the state. A jury was presented these arguments and presented these arguments in a very effective way through cross-examination by counsel, and the jury rejected those arguments. It's not for counsel, it's not for this court to second-guess those determinations about what her intent was. Now, clearly, we can look at the record and what the testimony is, and I think it's pretty obvious what her intent was. Counsel, let me interrupt you for a minute. You started a minute ago to talk about the statute and the requirements of the statute, and I'd like to focus on that for just a minute. So, does this battery statute treat instances in which an individual actually engages in the act of spitting on another person or on an officer any differently from instances like here, where the defendant didn't engage in the literal act of spitting, but spittle, accompanied by or by means of the cough, and made contact with Officer Starkey? Is there anything in the statute that would distinguish between those two? There is not, Your Honor, and that's my point. It's a question of context, and this is what this court wrote. Again, I believe Justice Steigen was the author. Regarding the insulting or provoking nature of spitting on another, we note that, quote, a particular physical contact may be deemed insulting or provoking based upon the factual context in which it occurs. Now, that factual context was presented to this jury, and they concluded that it was insulting and provoking based on the testimony they heard from the officers. Now, I'll give you an example, and this is an area where I concede it is about context. So, let's say, for example, someone's upset about getting arrested, and they happen to be the kind of person that is excitable, and when they get excitable, they can fog up a mirror, right? That is a wholly different set of facts and circumstances, a wholly different context than what we have here, where the person is intentionally discharging these particles, which we know, and certainly by, I believe it was July of 21 when the trial took place, a jury would have known in their common experience, there are microscopic particles that go flying. And once they've determined, for example, in a case like this, that the intent of the individual being arrested was to incite or provoke the police, whether she had COVID or not is completely irrelevant. It's a question of what was her intent when she was doing it. They concluded her intent was to insult and provoke them, and in fact, they testified that they were so intent, that they were so provoked. And so, I think to answer your question, Judge, it's a question of context. And again, that's why I said this case is not novel, and it's not close, because it doesn't, dissecting whether it was spittle or fog is really irrelevant to the question of what... I think perhaps the more open question is, is there any authority for your argument that the defendant's mere breath can constitute physical contact? You know, I think part of your argument is moisture and breath could lead a jury to reasonably infer that contact occurred. But would a jury, and I think Justice Steigman alluded to this earlier, would a jury need to hear evidence from some sort of expert or anybody that a person's breath contains moisture or droplets? And we don't have that here. Respectfully, Judge, you would not, if it's a matter of common experience. And I think that's what Justice Steigman pointed out with respect to, and he sort of beat me to the punch on that. He's going to talk about jury instructions and what they are instructed to use their common sense and common experience. No, they don't. And the fact that there is case law supporting spittle or, you know, the cases have run through the court and everyone on this court is familiar with the number of cases that have come from the Department of Corrections. When you have urine or feces thrown at folks that work there, just because there's a type of battery that is clearly ensconced in the law does not in itself exclude other types of batteries. The statute is very broad and there's no question, and I would push back just on the terminology that you used a bit, Judge, in the sense that I would say it wasn't just that she coughed or breathed on them. In this context, again, it's totality of the circumstances. And as the court says, viewed in the context of what happened during the arrest, they can use their common sense. We don't have to have an expert from the CDC come in and say that these diseases can be transferred from one person to another. My goodness, the defendant even knew that, which is why she was making those threats and making the statements that she did when she was coughing on them and intentionally sending those microscopic pieces of spittle toward the police officers. Mr. Robinson, I'm sorry, Justice Enoff, you were going to ask. No, I wasn't. Go ahead. Mr. Robinson, you seem to be arguing sort of pandemic disease issues. The statute was drafted before we ran into the pandemic, and it's clear that there's not authority for breath being contact for battery. So is there a distinction there? No, I don't think there is. Again, I'll repeat again, Judge, this is not, it's a factually novel case. It's not a legally novel case. Tuberculosis existed long before the statute was written. And I submit to you that in 1992, if someone was being arrested and doing precisely what the defendant was doing here, claiming she was on quarantine for tuberculosis, we would be making the exact same arguments. I'm sorry, but it doesn't address what both Justice Enoff and Steigman have alluded to. My common knowledge as a juror, I can make the connection or put together the fact that breath equals contact. Isn't it necessary for some expert testimony to tell us? Because I personally, as a juror, wouldn't know that breath is contact. I would expect some type of contact, feeling, spittle, pressure, things of that nature. You're right, Judge, and that's why the case law, in particular PEC and the cases that flow from it, talk about context. It's all about context. Really, COVID isn't all that important to this case. This is an aggravated battery case. This is not a transmission of communicable diseases case. So it's a question of there's contact based on those microscopic. Now, clearly, we're just talking about tribally in this context. Starkly clearly had spittle. There's a mountain of case law that supports being spit on as aggravated battery. So I'm narrowing this argument to the air and droplets and what Justice Steigman referred to as sort of fogging up a mirror and cleaning your glasses, that type of thing. No, to answer your question in a long way rather than short, Justice Kavanaugh, you don't need an expert to come in and lay that out. The same way that the jury could have heard this information and concluded that this was not an aggravated battery as to troglia based on the context and the totality of circumstances, because they just didn't feel like it amounted to a touching. Right. Or that sort of contact that rises to the level. So I have a question about all this. Going back to the statute. It's their section 12 history, a one and a two. A one is causes bodily harm and a two that you've been discussing primarily is make physical contact and then solving a provoking nature with an individual was this charge brought up with regard to club history, a two. I believe it was, but specifically, was the jury instructed about this, the business of making physical contact and then solving a provoking nature with an individual as opposed to causing bodily harm. Yes, I believe that was the instruction. Okay, well I want to check in that the other thing is picking up on my colleagues questions. They're correct are they not, but while Beck deals with spinning. This is a case where with regard to troglia we have breath in his face. The quote that I read repeatedly defense counsel, where it's close enough we can feel the heat of her breath on his face. But there's no case law that has ever said that's adequate, is there. Not to my knowledge, but again that I'm making a difference. I'm sorry. Did you think that would fit under perks. I do, I do, because, I mean, anyone who's ever played baseball understands that there are variations on a theme and spitting. Right. So, I mean, so if you're talking about spinning I think there's a, there's a law, a large continuum of, of law. Versus, I think what the, the fifth graders on my block referred to as a loogie. But I'll just point out judge to that end. And this is, this is a quote from the Davis case says we believe that the state is correct in its assertion that the particular physical contact may be deemed insulting or provoking based upon the factual context in which it occurs. Fine. In other words, what may be an innocent touching in one instance, maybe interpreted quite differently in a different set of circumstances. And I point this out because, as I conceded earlier. The, the type of breathing in the face or very, very light spittle that that troubling experience might not rise to that level in a different rise to the level of a battery in a different context. Clearly in this context, which is what, which is what the case law talks about in particular pack in this context based on what she said the actions that she took before and after what she said was her was her intent. Well, let's let's assume for the moment that she was just excited and upset, which obviously was and arguing with police, which is something which happens all the time. And maybe she got close to him was arguing and the same testimony I can feel what she was arguing with me. This is not right. I could feel the heat of her breath on my face. And there was no commentary about by the way, I'm in a coven quarantine or whatever she said I hope you get in the absence of that with this has been enough. Maybe not, but to be clear that was not the testimony here, my recollection of the testimony from Troglodyte was that she was intentionally trying to call on him and intentionally trying to make him feel the heat of that call on his face. That was the testimony. Well, the heat strikes me as significant in that, again, kind of experiences life in order to feel the heat of someone's breath on your face. They have to literally be inches away, as opposed to even a foot away. So how, how should that help inform us. Well, it's, again, the context, the context I go back to the, there's nothing novel that has to be written about this case. This court could literally cite Peck and apply the facts in the light most favorable to the state to Peck, and it would be resolved in favor of the state. Again, it's a it's a somewhat factually novel case because novel coronavirus has only been around for a short period of time, but it's not a legally novel case. Breath is one step removed and beyond spittle. Is it that it can be. That's where you're asking us to go with it. Well, no, I'm only asking you to agree with the jury that I'm only asking you to agree with the jury so could the jury have determined that it was not sufficient. Yes, they could have, but they did not. And there's nothing as a matter of law that says they can't conclude that that's a battery. The jury could literally. I'm trying to think of an example of something that the that the jury could not conclude was a battery in this context. So you're asking us to conclude as a matter of law. That. And that's what the defendant is arguing that this breath on the face could not constitute the offensive matter. Given the jury's rhetoric. Yeah, I'm stating it's awkward. And I'm arguing the opposite. In other words, the jury found this evidence sufficient to convict the breath on the face is described under the circumstances. And if I understand. Mr Scanlon's position. He's saying that as a matter of law, that verdict can't be permitted to stand. And that's what you're suggesting as well that as a matter of law, it should be permitted to stay. Yes, I'm saying unequivocally that as a matter of law, it should be permitted to stand, because the case law to this point is that it's a question of context. It's a question of context totality of circumstances. You know, they sometimes say bad facts make bad law. Well, sometimes bad facts make right verdicts. Right. And in this case, these are really bad facts. This was really inappropriate behavior. And the jury got it right. And there's nothing in the law that says that what the court concluded or what the jury concluded. It should be subject to reversal. Certainly not with starkly. But I would argue that the same applies for Traglia. And if there are no more questions on that, I would just on the 431 B question again in the in the in the stealing of the thunder category, I would just point this court to Williams, Ellie and and said the question about prejudice, I think, is a settled question again. This is not a novel question. And I think if this court accepted the defendant's position in this regard, it would be contrary to the Supreme Court's guidance. There are no other questions. I see none. Thank you, counsel. Justice Kavanaugh, I might thank Mr. Robinson for stepping in and this argument. Today, please. At short notice. Thank you.  Thank you, Your Honor. I just like to touch on a couple of things that the state said. And first of all, he repeatedly stated that this is all about context. And ultimately, I agree that it is all about context, particularly with regard to the aspect of knowledge. The evidence of what happened here deals with Miss Taylor being in this emotionally heavily emotionally charged situation, clearly upset with everyone around her and clearly intending to at least insult or offend the officers, possibly even to scare the officers. But that does not mean that she was intending or even consciously aware that physical contact would occur. The context suggests that her actions were all about trying to offend the officers or scare them where she didn't feel like it was right that she was being arrested. Let me ask this question based upon the argument Mr. Robbins just made. He says the jury found the evidence sufficient. And your argument is really not about the sufficiency of the evidence, but whether the law permits finding that the breathing and breathing on this person might be physical contact of an insulting or provoking nature. And the reason I asked that is because if it's a question. Let me state this different. If, in fact, we were to conclude that what she did she intended to do, and she intended to insult and provoke these people and breathe on them and say I got disease and everything else and that the evidence of that is real clear. But the question is, given all that breathing out of is that enough as a matter of as a matter of law, does law permit that conviction to stand. Then when we go to 431 question and we're asking whether the evidence is closely balanced. How does a legal issue, namely, does the statute permit this come into the equation. Typically when we're asking, is the evidence closely balanced, we're looking to factual assessment or as you said earlier, we're talking about. Is there a competing version. The way of competing versions of the evidence or is in this case the attorney argued that the police officers need not be believed because of inconsistencies with the report so suppose what I'm looking for is, if we were to conclude and I'll tip my hat I find that she intended to do what she wanted to do I can't speak for my colleagues I have no difficulty with the knowledge aspect but the question is really one of law, or the statute applies here, how does that figure into our closely balanced analysis. In that, in that instance it is whether or not there is there were two plausible options for the jury, you asked the state I believe your honor. Could the jury have determined that this wasn't that this wasn't sufficient for troglodyte to be found in the state said yes they could have determined that the jury determined that there wasn't physical contact but the state conceded in argument just now that the jury could have determined that this was insufficient for troglodytes troglodyte to be found, or physical contact who have been found as to troglodyte where the jury could have gone either way then I, the evidence is sufficiently closely balanced that the scales were tipped against Miss Taylor in this case by the 431 be error. I would also like to go back to the question we also talked about there had nothing to do with no prejudicial effect on the outcome of the case. I'm sorry your honor, the error involved here the failure to do a 431 proper admonition didn't affect anything about the evidence actually presented. Yep. Yes, Your Honor, I believe it did. And the reason is, again, that Miss Taylor was relying strongly on the jury's adherence to those principles specifically the principles that she was to be presumed innocent and that she was not required to testify or present any evidence on her own behalf. And in this case she did, because in this case she did not testify or present any evidence on her behalf. So, this, the courts failure to give the proper rule for 31 be instructions tip the scales against her by, by, by doing so, where she didn't present any evidence and wasn't required to do so. The only other thing I'd like to touch on your honor is that the state argued that the jury jury would have known that there are microscopic particles that are being projected in the situation, I sorry I see my time is up, if I may briefly conclude. The only problem with that is that the jury was deciding this after the pandemic had been long in place, and this occurred when, as the officers testified, nobody knew anything about code at the time. So, that ultimately doesn't hold water. I thank you, Your Honors and would ask for a reversal. Thank you counsel will take this matter advisement and stands and recess.